### MISSOURI-AMERICAN ELECTRIC CO. v. HAMILTON-BROWN SHOE CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 16, 1908.)

#### No. 2,817.

1. BANKRUPTCY (§ 463*)—TRIAL—EVIDENCE OFFERED SHOULD BE TAKEN AND RECORDED THOUGH HELD INADMISSIBLE—EXCEPTION.

It is the duty of examiners, masters, referees, and the court taking evidence in controversies in bankruptcy, in the absence of a jury, to take, record, and, in case of an appeal, to return to the reviewing court, all the evidence offered by either party, that which they hold to be incompetent or immaterial as well as that which they deem competent and relevant, to the end that if the appellate court is of the opinion that evidence rejected should have been received it may consider it, render a final decree, and thus conclude the litigation without remanding the suit to procure the rejected evidence.

From this rule evidence plainly privileged, the testimony of a privileged witness, and evidence which clearly and affirmatively appears to be so incompetent, irrelevant, or immaterial that it would be an abuse of the process or power of the court to compel its production or permit its introduction, are excepted.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 463.*]

2. TRIAL (§ 377*)—IT IS ERROR TO CLOSE HEARING BEFORE LOSING PARTY HAS CONCLUDED THE OFFER OF HIS EVIDENCE.

It is error for a court on a hearing of a controversy in which it is taking the testimony to refuse to take or to consider evidence which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the losing party desires to offer, and to close the hearing before such evidence is presented to the court so that it can consider it and determine its admissibility.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 887; Dec. Dig. § 377.*]

3. ACCORD AND SATISFACTION (§ 7*)—CONSIDERATION—RELEASE OF ENTIRE DEBT FOR PART PAYMENT VOID.

The release of an entire debt for a sum certain upon the payment of a part of the amount due is without consideration and void.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. § 46; Dec. Dig. § 7.*]

4. ACCORD AND SATISFACTION (§ 5*)—CONSIDERATION—RELEASE FOR PART PAYMENT IN THINGS DIFFERENT FROM THAT DUE VALID.

A release of an entire debt in consideration of the payment of articles different from the thing due according to the terms of the contract, although those articles are of much less value than the thing due, is valid, because the legal presumption is that the articles had a special value to the recipient, and the transaction is an accord and satisfaction.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 40, 41; Dec. Dig. § 5.*]

5. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§§ 4, 9*)—"GENERAL ASSIGNMENT FOR CREDITORS"—TRANSFER OF TITLE AND CONTROL OF SUBSTANTIALLY ALL PROPERTY OF DEBTOR ESSENTIAL TO.

A transfer of the title to and the possession and control of substantially all the property of a debtor to an assignee in trust to convert it into money and distribute it among the creditors of an assignor is essential to constitute a general assignment for the benefit of creditors under section 3a (4) of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]).

A debtor conveyed about three-fourths of its property and the proceeds of any sale it should make of the other fourth, which consisted of real estate of which the assignor retained the possession and the right of use, control, and disposition, to its principal creditor, in consideration of the latter's discharge of the debtor's obligation to it and of the creditor's agreement to pay all the other obligations of the debtor out of the proceeds of the property conveyed.

*Held*: The conveyance was not a general assignment for the benefit of creditors, because it did not transfer substantially all the property of the debtor, because the title, control, and power of disposition of the real estate remained in the assignor, because the assignor did not intend the instrument as a general assignment, and because its legal effect was not that of a general assignment but that of a sale of the property described in it to the assignee in consideration of its release of the debtor and of its contract to pay the debtor's other debts out of the proceeds of the property conveyed.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 1, 3, 11; Dec. Dig. §§ 4, 9.*

For other definitions, see Words and Phrases, vol. 4, pp. 3052–3054.]

6. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 6*)—"GENERAL ASSIGNMENT"—CONVEYANCE DIRECTLY TO CREDITOR IS NOT.

A conveyance of his property by a debtor directly to his creditor or creditors for their benefit does not constitute a general assignment for the benefit of creditors, because it raises no trust.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. § 5; Dec. Dig. § 6.*]

(Syllabus by the Court.)

Appeal from the District Court of the United States for the Eastern District of Missouri.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

W. R. Spooner (Joseph Barton, on the brief), for appellant.
Benjamin Schnurmacher (Harvey L. Christie and P. Taylor Bryan, on the brief), for appellees.

Before SANBORN and VAN DEVANTER, Circuit Judges, and W. H. MUNGER, District Judge.

SANBORN, Circuit Judge. This is an appeal from an adjudication in bankruptcy of the Missouri-American Electric Company, a corporation of the state of Missouri, upon a creditors' petition filed February 16, 1907, upon the grounds (1) that on October 7, 1906, the corporation, while insolvent, made a general assignment of all its property to the American Electric Company, a corporation of the state of New Jersey, and (2) that on October 17, 1906, the Missouri Company, while insolvent, paid to the American Company, one of its creditors, $18,000, with intent to prefer the latter to its other creditors, and that the latter company at that time had reasonable cause to believe that it was intended to give it a preference over other creditors similarly situated by this payment. There was no evidence of any payment of $18,000 or any like sum to the American Company within four months of the filing of the petition, except the transfer of the money and property which was subject to the written instruments executed on October 17, 1906, which the appellees insist constitute a general assignment for the benefit of the creditors of the Missouri Company under section 3a(4) of the bankruptcy law of 1898 (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]). The decision of the merits of the case turns upon the legal effect of those writings. The charges of the commission of the acts of bankruptcy were denied by the Missouri Company, the issues were tried by the district court, evidence which fills more than 200 pages of the printed transcript was adduced, the court closed the hearing while the Missouri Company was still introducing its evidence in defense and before it had rested, that company excepted to this premature closing of the case, and the court rendered a decree adjudging it a bankrupt.

The refusal of the court to hear and record the testimony which the defendant below was introducing before it, its premature closure of the case, and its decision of it against the defendant in the absence of the evidence it was seeking to introduce, was undoubtedly erroneous. A proceeding in bankruptcy is a proceeding in equity, and it is the duty of examiners, masters, referees, and the court, when taking evidence in controversies therein in the absence of a jury, to take, record, and, in case of an appeal, to return to the reviewing court, all the evidence offered by either party, that which they hold to be incompetent or immaterial as well as that which they deem competent and relevant, to the end that, if the appellate court is of the opinion that evidence rejected should have been received, it may consider it, render a final decree, and thus conclude the litigation without remanding the suit to procure the rejected evidence. From this rule evidence plainly privileged, the testimony of privileged witnesses, and evidence which clearly and affirmatively appears to be so incompetent, irrelevant, and immaterial that it would be an abuse of the process or power of the court

to compel its production or permit its introduction, are excepted. The evidence which the Missouri Company was seeking to introduce when the court closed the case did not fall under this exception, and it should have been taken and recorded. First National Bank v. Abbott (filed November 24, 1908) 165 Fed. 852; Dowagiac Mfg. Co. v. Lochren, 74 C. C. A. 341, 343, 344, 143 Fed. 211, 213, 214; Blease v. Garlington, 92 U. S. 1, 7, 8, 23 L. Ed. 521; In re De Gottardi (D. C.) 114 Fed. 328, 342; Dressel v. North State Lumber Co. (D. C.) 119 Fed. 531; In re Romine (D. C.) 138 Fed. 837, 839.

Moreover, the court could not have known what other evidence, which the defendant had not then presented, it might desire to offer before it rested its case, and it was plain error to close the hearing and decide the case against it before it had offered all its evidence. Sometimes when a party to a controversy, in whose favor the court perceives that it must decide, has made plenary proof of his case, the record conclusively proves that he has suffered no prejudice, and hence no reversal follows from a refusal to take and hear cumulative evidence on his behalf. But when a court refuses to take and to consider evidence which the losing party desires to offer before that evidence has been presented to it so that it can determine the question of its admissibility, the presumption that error produces prejudice necessarily prevails.

The petitioning creditors, however, were not prevented from introducing their evidence. They made no objection and took no exception to the premature close of the trial, and we turn to the evidence which was actually introduced to ascertain whether or not the decree of the district court is sustained by the competent and relevant evidence returned in the record. Blease v. Garlington, 92 U. S. 1, 8, 23 L. Ed. 521; First National Bank v. Abbott (filed November 24, 1908) 165 Fed. 852. A careful examination and analysis of the evidence convinces that it established these facts beyond reasonable question: On October 17, 1906, the Missouri Company owned a lot in St. Louis which was worth about $18,000 and was subject to a trust deed to secure the payment of $10,000. It had other assets which were worth not less than $20,000, so that its property was of the value of about $28,000 above the incumbrances upon it. It was indebted to the American Electric Company, a corporation of New Jersey, in the sum of $139,018.36. While the aggregate amount of its other debts is not well shown, and the burden was upon the petitioning creditors to prove it, their counsel assume in their brief, and this assumption is in accord with the evidence upon the subject, that this aggregate was less than the value of the property of the company, so that, aside from its debt to the American Company, it had property sufficient to pay its debts. In this condition of its affairs the Missouri Company on October 17, 1906, in consideration of the release and satisfaction of its debt to the American Company, its largest creditor, and of the agreement of that creditor to pay its other debts out of the proceeds of the property which it assigned, conveyed to the American Company its bills and accounts receivable, its choses in action, and the proceeds of sales made or to be made of its real estate, plant, machinery, stock, chattels, rights, and franchises; and the American Company, in consideration of that

conveyance, executed and delivered to the Missouri Company a written satisfaction and discharge of the latter's debt to it. If these writings had the legal effect which they purported to have, they reduced the indebtedness of the Missouri Company $139,018.36, transformed it from an insolvent to a solvent corporation, and left all its property and all the proceeds of its property still available for the discharge of its debts to other creditors. But counsel for the petitioning creditors insist that the debt to the American Company was not discharged, because the release of an entire debt for a sum certain in consideration of the payment of a part of it is without legal consideration and the creditor may still sue and recover the residue. Fire Insurance Ass'n v. Wickham, 141 U. S. 564, 12 Sup. Ct. 84, 35 L. Ed. 860; Bostwick v. United States, 94 U. S. 53, 24 L. Ed. 65. The rule invoked is indisputable, but it applies only when the part payment is made in the same medium called for by the obligation, as in money if money is due, in corn if corn is due, by the terms of the agreement.

Where articles other than that for which a contract provides are paid and received in satisfaction of it, they constitute a sufficient consideration for its discharge, although they are of much less value than that due, and this because the legal presumption obtains that they had a special value to the recipient. Such a transaction is necessarily an accord and satisfaction, and a release of an obligation founded upon it is valid. Pinnel's Case, 5 Coke, 117, where the law was thus stated:

"And it was resolved by the whole court that payment of a lesser sum on the day in satisfaction of a greater cannot be any satisfaction for the whole, because it appears to the judges that by no possibility a lesser sum can be a satisfaction to the plaintiff for a greater sum. But the gift of a horse, a hawk, or robe, etc., might be more beneficial to the plaintiff than the money in respect of some circumstances, or otherwise the plaintiff would not have accepted it in satisfaction."

Very v. Levy, 54 U. S. 345, 359, 14 L. Ed. 173; City of San Juan v. St. John's Gas Co., 195 U. S. 510, 521, 25 Sup. Ct. 108, 49 L. Ed. 299; Neal v. Handley, 116 Ill. 418, 6 N. E. 45, 56 Am. Rep. 781; Dimmick v. Sexton, 125 Pa. 334, 17 Atl. 345; Bull v. Bull, 43 Conn. 455. The assignment of October 17, 1906, conveyed not only the proceeds of sales of certain property of the Missouri Company made and to be made, but also all accounts and bills receivable and rights or choses in action belonging to the Missouri Company, and all books, papers, documents, and writings of that company pertaining thereto. Thus it brought the transaction far within the latter rule, and the debt of the Missouri Company to the American Company was discharged by the release given in consideration of this conveyance. The transaction evidenced by the assignment and the release, therefore, did not have the effect to prefer, nor did it evidence any intention of the debtor to prefer, the American Company to its other creditors, but it had the opposite effect and evidenced the contrary intention. It preferred the other creditors of the American Company.

Was the assignment of October 17, 1906, a general assignment for the benefit of the creditors of the Missouri Company within the meaning of section 3a(4) of the bankruptcy act of 1898 and hence an act of bankruptcy? A general assignment conveys all or substantially all

the property of the debtor, while an assignment which conveys but a portion of it is a partial assignment, and not a general assignment. United States v. Hooe, 3 Cranch, 73, 90, 2 L. Ed. 370; Bock v. Perkins, 139 U. S. 628, 641, 11 Sup. Ct. 677, 35 L. Ed. 314; United States v. Howland, 4 Wheat. 108, 114, 4 L. Ed. 526; United States v. Langton, 26 Fed. Cas. 862, 864, No. 15,560; United States v. Clark, 25 Fed. Cas. 447, 451, No. 14,807; Mussey v. Noyes, 26 Vt. 462, 474, 475. This assignment did not convey the real estate of the assignor, which was about one-fourth of its property in value after the amount of the incumbrance upon the real estate had been deducted from its total value. It is true that the assignment transferred the proceeds of any sale of this real estate that had been made, or that should be made, but none had been made, and the Missouri Company retained the absolute possession, use, control, and power of disposition of it. Notwithstanding the assignment the assignor retained the right and the power to use, to rent, and never to sell the real estate. An absolute transfer by a debtor of both the legal and the equitable titles to the assignee in trust for his creditors, so that the grantor retains no control of its use and no power to dispose of it, is indispensable to a valid assignment of such property for the benefit of creditors. Sandmeyer v. Dakota Fire & Marine Ins. Co., 2 S. D. 346, 352, 50 N. W. 353, and cases there cited; Smith & Keating Imp. Co. v. Thurman, 29 Mo. App. 186, 191. The conveyance here in question made no such transfer of the real estate of the debtor.

A general assignment for the benefit of creditors is ordinarily a conveyance by a debtor without consideration from the grantee of substantially all his property to a party in trust to collect the amounts owing to him, to sell and convey the property, to distribute the proceeds of all the property among his creditors, and to return the surplus, if any, to the debtor. A conveyance of his property by a debtor directly to his creditor, or to his creditors, for their benefit, is not a general assignment for the benefit of creditors because it raises no trust. Mussey v. Noyes, 26 Vt. 462, 474, 475; Anniston Iron & Supply Co. v. Anniston Rolling Mill Co. (D. C.) 125 Fed. 974. This conveyance is an assignment by a debtor to its largest creditor in payment of the latter's debt of a part of the debtor's property in consideration of the release of its debt by this creditor and of the latter's agreement to pay all other creditors of the grantor out of the proceeds of the property assigned. The apparent purpose and effect of it is a sale of the remainder of the part of the debtor's property described in the assignment after all its other debts have been paid out of it to the debtor's chief creditor in consideration of the latter's release and discharge of its claim against the debtor. The controlling rule for the interpretation of written instruments is that the intention of the parties should be adduced from them and given effect. Bock v. Perkins, 139 U. S. 628, 635, 11 Sup. Ct. 677, 35 L. Ed. 314. In the courts of the state of Missouri, of the state under whose laws the grantor in this conveyance was organized and in which its real estate and its place of business were situated, it is an established rule of construction that no instrument shall be held to constitute an assignment for the benefit of creditors unless it clearly appears either

that the grantor intended that it should so operate or that such was its necessary legal effect. Dry Goods Co. v. Grocer Co., 68 Mo. App. 290, 295; Haase v. Distilling Co., 64 Mo. App. 131, 135; Hargadine v. Henderson, 97 Mo. 375, 387, 11 S. W. 218; Jaffrey v. Mathews, 120 Mo. 317, 328, 25 S. W. 187; Brookshier v. Mutual Fire Ins. Co., 91 Mo. App. 599, 605.

In Becker v. Rardin, 107 Mo. 111, 117, 17 S. W. 892, a debtor had conveyed to one of his creditors his stock of goods, the creditor had satisfied his claim, and had agreed to pay the claims of certain other creditors in consideration of that conveyance. The parties further agreed in the instrument of conveyance that the goods should be invoiced, a part at first cost and a part at their then cash value, that, if the invoice value proved to be less than the aggregate amount agreed to be paid by the grantee to the creditors named therein the debtor would assign accounts receivable sufficient in amount to make up that aggregate, and that if the invoice value should prove to be more than that aggregate, then the balance above that amount should be paid to a third party for the benefit of other parties not named in the instrument. The Supreme Court of Missouri held that the conveyance did not constitute a voluntary assignment for the benefit of creditors.

Because the assignment of October 17, 1906, did not convey substantially all but only a portion of the property of the Missouri Company, because it did not transfer the title to its real estate to the assignee, but left the real estate, its use, control, and power of disposition in the grantor, because it was the intention of the grantor when it made the instrument to sell the remainder of a part of its property after its other debts had been paid out of the proceeds of that part to its chief creditor in consideration of a discharge of its obligation to it, and it was not its purpose, nor was it the legal effect of the assignment of October 17, 1906, to make a general assignment of the property of the debtor for the benefit of its creditors, our conclusion is that that instrument was not such an assignment and its execution was not an act of bankruptcy. The result is that the creditors failed to establish the averments of acts of bankruptcy contained in their petition, and the adjudication in bankruptcy must be reversed, and the case must be remanded to the court below with directions to dismiss the petition.

It is so ordered.